UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| XL INSURANCE AMERICA, INC., CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NOS. PRPNA1700847 AND PRPNA1702387, and UNITED STATES FIRE INSURANCE COMPANY,<br><br>                    Plaintiffs,<br><br>        v.<br><br>DIAMONDROCK HOSPITALITY COMPANY, and DIAMONDROCK FRENCHMAN'S OWNER, INC.,<br><br>                    Defendants. | No. 18 Civ. 10025 (AJN) |

**MEMORANDUM OF LAW IN SUPPORT OF
DIAMONDROCK'S MOTION TO DISMISS OR STAY**

COVINGTON & BURLING LLP

David A. Luttinger Jr.
620 Eighth Avenue
New York, New York 10018
(212) 841-1000

Matthew J. Schlesinger
Colin P. Watson
850 10th Street, NW
Washington, DC 20001
(202) 662-6000

*Attorneys for Defendants DiamondRock
Hospitality Company and DiamondRock
Frenchman's Owner, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... i

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................... 3

I.      Frenchman's Reef, its Economic Impact on the Virgin Islands, and the Damage
        Caused by the Hurricanes. ................................................................................... 3

II.     DiamondRock's Insurance Specifically Provides Code-Upgrade Coverage..................... 4

III.    The Insurers Refuse to Pay for Code Upgrades and Other Covered Losses. .................... 5

IV.     The Insurers' New York Action Is A Second-Filed Duplicative Suit. .............................. 7

ARGUMENT ..................................................................................................................... 8

I.      This Court Has Significant Discretion to Dismiss or Stay this Declaratory Action
        for Insurance Coverage in Favor of the St. Thomas Action, Notwithstanding the
        Purported XL Forum Selection Clause. ............................................................... 8

II.     The Relevant Abstention Principles Strongly Favor Deference to the First-Filed St.
        Thomas Action....................................................................................................... 10

        A.      DiamondRock's First-Filed St. Thomas Action Involves the Same Parties,
                Claims, and Issues as the Later-Filed New York Action.................................... 11

        B.      This Territorial Law-Centered, Real Property Coverage Dispute Presents
                the Paradigm Case for Abstention. ...................................................... 13

        C.      The Virgin Islands is the More Natural and Convenient Forum to Litigate
                the Parties' St. Thomas-Based Dispute.................................................... 15

CONCLUSION................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&E Television Networks v. Genuine Entm't, Inc.*,
2010 WL 2308092 (S.D.N.Y June 10, 2010) ........................................................15

*Ace Am. Ins. Co. v. GrafTech Int'l Ltd.*,
2014 WL 2884681 (S.D.N.Y. June 24, 2014) ........................................................12

*Am. Int'l Grp., Inc. v. Pac. Inv. Mgmt. Co. LLC*,
2016 WL 1572994 (S.D.N.Y. Apr. 18, 2016)........................................................13

*Amusement Indus. v. Stern*,
693 F. Supp. 2d 301 (S.D.N.Y. 2010).................................................................11

*B A Props., Inc. v. Aetna Cas. & Sur. Co.*,
273 F. Supp. 2d 673 (D.V.I. 2003) ....................................................................14

*Beedle v. Kilgus*,
2017 WL 5665413 (V.I. Super. Ct. Nov. 21, 2017) ..............................................13

*Brillhart v. Excess Ins. Co. of Am.*,
316 U.S. 491 (1942)........................................................................ *passim*

*Certain Underwriters at Lloyd's v. New Dominion*, *LLC*,
2016 WL 4688866 (S.D.N.Y. Sept. 7, 2016)........................................................10

*Citibank, N.A. v. Cahmmah*,
44 V.I. 85 (V.I. Terr. Ct. 2001).........................................................................14

*Colo. River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976).......................................................................................9

*Comedy Partners v. St. Players Holding Corp.*,
34 F. Supp. 2d 194 (S.D.N.Y. 1999)...................................................................9

*Dish Network, L.L.C. v. Am. Broad. Cos.*,
2012 WL 2719161 (S.D.N.Y. July 9, 2012) ..................................................11, 12

*Dow Jones & Co. v. Harrods Ltd.*,
346 F.3d 357 (2d Cir. 2003)...................................................................8, 10, 11, 14

*Fed. Ins. Co. v. The May Dep't Stores Co.*,
808 F. Supp. 347 (S.D.N.Y. 1992).....................................................................15

*Fed. Ins. Co. v. Safeskin Corp.*,
  1998 WL 832706 (S.D.N.Y. Nov. 25, 1998)...................................................15

*Glencova Inv. Co. v. Trans-Res., Inc.*,
  874 F. Supp. 2d 292 (S.D.N.Y. 2012)........................................................11

*Haagen–Dazs Shoppe Co. v. Born*,
  897 F. Supp. 122 (S.D.N.Y. 1995)..............................................................8

*Houston Gen. Ins. Co. v. Equitable Life Assur. Soc. of U.S.*,
  1989 WL 13473 (W.D.N.Y. Feb. 15, 1989) ...............................................17

*ICBC Standard Secs., Inc. v. Luzuriaga*,
  217 F. Supp. 3d 733 (S.D.N.Y. 2016)........................................................11

*Impala Warehousing (US) LLC v. Kostmayer Const., LLC*,
  2012 WL 6621729 (S.D.N.Y. Dec. 19, 2012) ............................................16

*Jimenez v. Rodriguez-Pagan*,
  597 F.3d 18 (1st Cir. 2010).........................................................................9

*C Fink Family Trust ex rel. Landau v. Am. Gen. Life Ins. Co.*,
  2011 WL 1453793 (S.D.N.Y. April 7, 2011) ..........................................8, 15

*N. Am. Airlines, Inc. v. Int'l Bhd. of Teamsters, AFL-CIO*,
  2005 WL 646350 (S.D.N.Y. Mar. 21, 2005) ...............................................9

*N.E.M. (West Indies) Ins. Ltd. v. Rawlins*,
  2004 WL 1118510 (D.V.I. Mar. 19, 2004)...................................................9

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Int'l Wire Grp., Inc.*,
  2003 WL 21277114 (S.D.N.Y. June 2, 2003) ...........................................15

*Nat'l Union Fire Ins. Co. v. Turbi de Angustia*,
  2005 WL 2044930 (S.D.N.Y. Aug. 23, 2005) .........................................9, 13

*Neon Const. Enters., Inc. v. Int'l Bonding & Const. Servs., Inc.*,
  2012 WL 3111748 (V.I. Super. Ct. July 25, 2012)......................................12

*One St. Peter, LLC v. Bd. of Land Use Appeals*,
  67 V.I. 920 (2017)....................................................................................2, 15

*Philo v. Armstrong Serv., Inc.*,
  2017 WL 2294638 (V.I. Super. Ct. May 22, 2017) .....................................12

*Soros Fund Mgmt. LLC v. TradeWinds Holdings, Inc.*,
  2018 WL 1276879 (S.D.N.Y. Mar. 12, 2018) ........................................10, 13

*TIG Ins. Co. v. Fairchild Corp.*,
  2008 WL 2198087 (S.D.N.Y. May 27, 2008) ........................................................10, 11, 14, 15

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) ........................................................................................................3, 8

**Other Authorities**

28 U.S.C. § 2201 ....................................................................................................................8

9 V.I.C. § 310 ..............................................................................................................6, 13, 14

22 V.I.C. § 820 ............................................................................................................2, 12, 14

29 V.I.C. § 292 ...............................................................................................................7, 15

DiamondRock Hospitality Company ("DRH") and DiamondRock Frenchman's Owner, Inc. ("DRFO") (together, "DiamondRock") respectfully submit this memorandum of law and the declaration of Colin P. Watson ("Watson Decl.") in support of DiamondRock's motion to dismiss the Insurers' complaint or stay the action.[1]

## PRELIMINARY STATEMENT

This second-filed action (the "New York Action") arises out of the very same insurance coverage dispute—"the same parties, facts and legal issues," the Insurers themselves say—pending in a first-filed action that DiamondRock brought against the Insurers in St. Thomas, Virgin Islands (the "St. Thomas Action").  At issue is the extent of coverage owed by the Insurers to repair Frenchman's Reef & Morning Star Marriott Beach Resort ("Frenchman's Reef" or the "Resort") in St. Thomas, which was badly damaged in Hurricanes Irma and Maria.

A driving force of this dispute is quintessentially local to the Virgin Islands—the validity (contested by the Insurers) of the determination by the Virgin Islands Department of Planning and Natural Resources ("DPNR"), pursuant to a Virgin Islands building code statute, that the repairs to the heavily damaged exterior walls of the Resort's two primary buildings must meet current territorial building code resiliency standards, as opposed to those in place in the 1990s or even before when the buildings were renovated and/or constructed.  If the damage to the exterior walls triggers the current Virgin Islands building code, then the Insurers must pay "[t]he increased cost of repair or reconstruction" under the special building code upgrade coverage in the Insurers' policies.  The issue is one in which the Virgin Islands has a strong interest and that will require the

---

[1] The Insurers are XL Insurance America, Inc. ("XL"), Certain Underwriters at Lloyd's of London subscribing to Policy Numbers PRPNA1700847 and PRPNA1702387, and United States Fire Insurance Company.

application of Virgin Islands law and the testimony of Virgin Islands residents, including government officials.  It is for these reasons that DiamondRock initiated litigation in St. Thomas.

The Insurers waited six weeks after DiamondRock filed the St. Thomas Action to bring this second-filed New York Action.  The Insurers do not dispute that they are subject to suit in the St. Thomas Action but for one thing: a New York forum selection clause buried in the policy of—and as the Insurers concede applicable to—only *one* of the four Insurers, XL.[2]  This dispute has no other relevant connection to New York.  None of the parties are domiciled in New York, none of the policies were brokered in New York, and the insured property is not located in New York.

The XL forum selection clause is unenforceable by XL in the St. Thomas Action.  Clear Virgin Islands law voids such clauses when applied to insured property in that territory, 22 V.I.C. § 820, or when enforcement would require litigation in an inconvenient forum (as New York is for this St. Thomas-centric dispute).  Regardless, even if XL's forum selection clause is somehow valid in a Virgin Islands proceeding, none of the other Insurers' policies has a forum selection clause, and the St. Thomas Action should continue against them whether or not XL participates there.

In the St. Thomas Action, on December 20, 2018, DiamondRock opposed the Insurers' motion to dismiss or stay the St. Thomas Action in favor of New York proceedings (the Insurers' reply in St. Thomas is due January 14, 2019).  DiamondRock now moves to dismiss or, in the alternative, stay this New York Action pursuant to the *Wilton/Brillhart* abstention doctrine.  *See*

---

[2] A fifth insurer, Princeton Excess and Surplus Lines Insurance Company ("PESLIC"), is a defendant in the St. Thomas Action but is not a party to the New York Action.  PESLIC's policy does not contain a New York forum selection clause, and PESLIC answered in the St. Thomas Action instead of joining the remaining Insurers' motion to dismiss there.

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942).

This Court routinely invokes that doctrine in insurance coverage actions just like this, rejecting insurers' efforts to evade the forum chosen by their insureds, especially where (as here) that forum has a strong connection to, and interest in deciding, the parties' dispute. This Court has exercised its discretion to abstain from second-filed duplicative proceedings even in the face of otherwise mandatory forum selection clauses. This litigation plainly belongs in St. Thomas, and no useful purpose is served by the Insurers' second-filed action.

For these and other reasons explained more fully below, this Court should dismiss the Insurers' complaint or, at minimum, stay this action until the St. Thomas court decides whether to maintain jurisdiction over the St. Thomas Action either with or without XL.

## BACKGROUND

**I.      Frenchman's Reef, its Economic Impact on the Virgin Islands, and the Damage Caused by the Hurricanes.**

Frenchman's Reef is a luxury four-star, oceanfront resort located in St. Thomas. Watson Decl. Ex. A ¶ 29. It is owned by DiamondRock's wholly-owned subsidiary, DRFO, a Virgin Islands corporation with its principal place of business in St. Thomas. *Id.* ¶¶ 14–15. With 470 guestrooms, Frenchman's Reef is the Virgin Islands' largest hotel and private employer, and a major tourism driver for the territory. *Id.* ¶¶ 30–31. As stated in an Economic Impact Analysis Report prepared by the University of the Virgin Islands in March 2018, Frenchman's Reef in 2016 (the Resort's last full year of operation) "directly and indirectly accounted for: 1,302 USVI jobs, with $56.1 million in wages; and $81.1 million in territory-wide economic output." Watson Decl. Ex. B at 4. Taxes and duties paid by Frenchman's Reef to the Virgin Islands in 2016 totaled nearly $8 million. *Id.* at 6.

On September 6, 2017, Hurricane Irma struck the Virgin Islands as a major Category Five Hurricane with maximum sustained winds of 185 miles per hour—causing massive damage to Frenchman's Reef.  Watson Decl. Ex. A ¶ 32.  Every Frenchman's Reef building and structure, and their associated contents, were damaged.  *Id.* ¶¶ 32–36.  In particular, the Resort's two largest buildings—the Main Building-Ocean Tower and Harbor View—suffered major breaches to their exterior walls and roofs and, as a result, suffered massive interior damage.  *Id.*  Hurricane Maria caused additional damage to the Morning Star portion of the Resort.  *Id.*

Frenchman's Reef has been closed for well more than a year.  Contrary to the Insurers' assertion, DiamondRock has never taken the position that "a wholesale demolition and substantial rebuild" of the Frenchman's Reef is required.  *Id.* ¶¶ 6, 44.  But, even a cursory walk through the property demonstrates the need for extensive repairs.

## II.    DiamondRock's Insurance Specifically Provides Code-Upgrade Coverage.

DiamondRock's relevant property insurance program—for the policy year April 1, 2017 to April 1, 2018—provides a total of $361 million in limits through multiple layers and insurers. Various insurers have paid the first $95 million of that coverage for Irma-related losses (including funds for site-stabilization and business income losses).  Coverage beyond that first $95 million is provided by the Insurers who are resisting their obligations in this lawsuit.  Watson Decl. Ex. A ¶¶ 23–24.

All of the policies in DiamondRock's property insurance program provide, among other things:

- Full replacement cost coverage, including the cost to rebuild or replace damaged property with "new materials of like size, kind and quality";

- *Special building-code upgrade coverage*, beyond full replacement cost coverage, for "[t]he increased cost of repair or reconstruction of the damaged and undamaged property" to comply with the minimum requirements of the "enforcement of any law, ordinance or governmental directive or standard in force at the time of loss"—like the directive from DPNR here; and

- DiamondRock's lost income during (1) the hotel rebuild period (including the extra time it takes to rebuild up to the building-code upgrade requirements), and (2) after re-opening, the time required (up to 18 months) for the hotel to restore its business to pre-loss levels.

*Id.* ¶¶ 26–28; *see also* Watson Decl. ¶ 12.

## III.    The Insurers Refuse to Pay for Code Upgrades and Other Covered Losses.

The Insurers claim, among other things, that they are not responsible for the expense of rebuilding key aspects of the damaged property—like the exterior walls of the two largest buildings (the Main Building-Ocean Tower and Harbor View)—to current building codes, as required by Virgin Islands building code statute and the directive of the territory's permitting authorities.  Watson Decl. Ex. A ¶¶ 37–46.[3]  Instead, the Insurers appear to take the position that those authorities are wrong and that decades-old standards, in effect when the Frenchman's Reef buildings were constructed or remodeled, are sufficient.  *Id.* ¶ 40.  At issue is not the interpretation of the Insurers' policies, but the scope of the damage and whether it is significant enough to require the repairs to meet the current building code resiliency standards pursuant to the relevant Virgin

---

[4] Although the policies cover upgrades to the building code in force as of the time of the loss—here, the Insurers say, the 2015 version of the International Building Code ("IBC"), incorporated by reference in the Virgin Islands Building Code—the applicable portions of the code now in effect—i.e., the 2018 IBC—are identical or materially identical to the applicable portions of the 2015 IBC.

5

Islands building code statute, as enforced by territorial officials.  *See* 29 V.I.C. § 310(1–3), (8) (describing various triggers for code upgrades based on the extent or nature of damage or repairs "as determined by the [DPNR] Commissioner").

The Insurers say the current Virgin Islands building code standards are not triggered even though: (1) Hurricane Irma blew gaping holes through the exterior walls of the Main Building and Harbor View, resulting in massive interior damage from winds and reverberating pressure that shook interior walls back and forth—something that all concerned should want to avoid in future storms; and (2) the Virgin Islands Department of Planning and Natural Resources, which has broad discretion to determine whether repairs necessitated by hurricane damage must be to current code, has mandated that the repairs satisfy current Virgin Islands building code standards.

In fact, on July 16, 2018, the DPNR issued a building permit for the reconstruction of the exterior of the Main Building that requires the repairs to meet current Virgin Islands building code standards.  Watson Decl. Ex. C.  Not satisfied with this directive, the Insurers requested further "proof" that the DPNR was requiring that the exteriors and roofs of the Main Building and Harbor View undergo code upgrades.  Watson Decl. Ex. D at 2.  Mr. Douglas Hodge, Director of the DPNR Division of Building Permits, then re-inspected the site and confirmed in a September 14, 2018 letter that:

> DPNR has advised DiamondRock that it issued the Permit because the repair plans conform to the minimum requirements of the applicable statutes and code provisions and would not have issued it unless it did. . . . [T]he Main Building/Ocean Tower exterior envelope **must be replaced** as per the Permit. . . . DPNR expects that any further permit applications for reconstruction of the Main Building/Ocean Tower roofs as well as the Harbor Wing exterior envelope and roofs **will also conform** to the 2018 International Building Code.

Watson Decl. Ex. E at 1–2 (emphases added).  Mr. Hodge also confirmed that the "DPNR has prioritized safety and resiliency in its implementation and enforcement of the U.S.V.I. Building

Code, emphasizing that the Code was expressly designed to 'safeguard life and limb, property, and public welfare' and to ensure that 'good construction practices are followed.'   29 V.I.C. § 292(a),(c)."  *Id.* at 1.

DiamondRock provided the September 14, 2018 letter to the Insurers, but the Insurers nonetheless refuse to concede, despite the substantial efforts of DiamondRock to convince them otherwise, that the code upgrades are required and thus covered.  And, the Insurers refuse to pay tens of millions of dollars for other necessary repairs and the lost income for the full time it will take to rebuild the Resort.

## IV.   The Insurers' New York Action Is A Second-Filed Duplicative Suit.

The Insurers stated in St. Thomas that this New York Action, filed on September 28, 2018, concerns "the same parties, facts and legal issues" that are at issue in the St. Thomas Action. Watson Decl. Ex. F  at 2.[4]  Not only, however, does the St. Thomas Action contain a request for declaratory relief that mirrors that here, it also contains DiamondRock's coercive claim for breach of contract and damages against the Insurers (the Insurers here seek only declaratory relief against DiamondRock).  *Compare* Watson Decl. Ex. G ¶¶ 56–67, *with* Watson Decl. Ex. A ¶¶ 47–50. And, as mentioned, one insurer—PESLIC—answered in St. Thomas and did not join in this New York Action.  On October 30, 2018, within 30 days of service of the New York complaint, DiamondRock removed the New York Action to this Court.  *See* Dkt. 1.

---

[4] *Compare* Watson Decl. Ex. G ¶ 11–13 (DiamondRock seeking coverage for "property damage, business interruption, and other insured losses sustained at Frenchman's Reef and Morning Star Resort . . . as a result of Hurricane Irma and flood surge associated with Hurricane Maria"), *with* Watson Decl. Ex. A ¶ 1 (Insurers seeking declaratory relief "with regard to alleged property damage and time element losses sustained at Frenchman's Reef and Morning Star Resort . . . as a result of Hurricanes Irma and Maria").

On November 30, 2018, the Insurers (excluding PESLIC) moved the St. Thomas court to dismiss or stay the St. Thomas Action in favor of the New York Action; they relied solely on the invalid XL "forum selection clause," which references only the prior year's XL policy (rather than the policy at issue) and, in any event, applies only to XL and none of the other Insurers.  *See* Watson Decl. Ex. F.  The Insurers did not dispute that they are otherwise subject to suit in St. Thomas, including because they conduct significant insurance business in the Virgin Islands.  *Id.* DiamondRock opposed the Insurers' motion on December 20, 2018.  *See* Watson Decl. Ex. H. Any reply in further support of the Insurers' motion is due on or before January 14, 2019.

Under Virgin Islands law, briefing on the Insurers' motion does not automatically stay the action.  *See* V.I. R. Civ. P. 26(d)(4) ("The filing of any motion—including potentially dispositive motions such as a motion to dismiss or a motion for summary judgment—shall not stay discovery in the action unless the judge so orders.").

## ARGUMENT

**I.     This Court Has Significant Discretion to Dismiss or Stay this Declaratory Action for Insurance Coverage in Favor of the St. Thomas Action, Notwithstanding the Purported XL Forum Selection Clause.**

The Declaratory Judgment Act, 28 U.S.C. § 2201, allows district courts "to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003).  The Supreme Court has interpreted the statute as "confer[ring] on federal courts *unique and substantial discretion* in deciding whether to declare the rights of litigants."  *Wilton*, 515 U.S. at 286 (emphasis added).[5]

---

[5] This is the case even where, as here, the declaratory action began in state court and arrived in federal court via removal.  *See, e.g.*, *Haagen–Dazs Shoppe Co. v. Born*, 897 F. Supp. 122, 126 & n.2 (S.D.N.Y. 1995) ("Because the Declaratory Judgment Act is procedural, *Wilton* and *Brillhart* apply with full force in this removal action premised on diversity of citizenship."); *C Fink Family*

Abstention is appropriate "particularly when there is a pending proceeding in another court, state or federal, that will resolve the controversies between the parties." *N. Am. Airlines, Inc. v. Int'l Bhd. of Teamsters, AFL-CIO*, 2005 WL 646350, at *16 (S.D.N.Y. Mar. 21, 2005); *Brillhart*, 316 U.S. at 495 ("Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.").[6]

As this Court has recognized, a forum selection clause is not a per se obstacle to abstention. Rather, when (as here) the question of whether a forum selection clause "obligates defendants to litigate in a New York court is . . . subject to a pending motion to dismiss or stay before" another court, moving forward with the New York action would be "unseemly and unnecessarily duplicative." *Nat'l Union Fire Ins. Co. v. Turbi de Angustia*, 2005 WL 2044930, at *3 (S.D.N.Y. Aug. 23, 2005).

In such instances, this Court has ruled that the prudent course is to at least stay New York proceedings until the other court—here, the St. Thomas court—resolves the forum selection dispute pending before it, and then dismiss the duplicative New York litigation should the other court decide to retain jurisdiction. *See id.* (staying insurer's federal action, under *Wilton/Brillhart*, pending Texas state court's determination of whether New York forum selection clause deprived Texas of jurisdiction); *see also Comedy Partners v. St. Players Holding Corp.*, 34 F. Supp. 2d 194, 197 (S.D.N.Y. 1999) (dismissing in favor of a first-filed California suit, and noting that "even if

---

*Trust ex rel. Landau v. Am. Gen. Life Ins. Co.*, 2011 WL 1453793, at *3 (S.D.N.Y. April 7, 2011) (same).

[6] For purposes of federal abstention analysis, the same deference is afforded to the territory of the Virgin Islands as is afforded to a U.S. state. *See, e.g.*, *N.E.M. (West Indies) Ins. Ltd. v. Rawlins*, 2004 WL 1118510, at *1–2 (D.V.I. Mar. 19, 2004) (abstaining, under *Brillhart*, in deference to parallel Virgin Islands territorial proceedings); *cf. Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 27–32 (1st Cir. 2010) (abstaining, under *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), in deference to parallel Puerto Rico Commonwealth court proceedings).

[the parties' New York forum selection] clause were mandatory" in the New York court's judgment, "[s]ince the California court has refused to stay or dismiss the parallel breach of contract action, allowing the instant suit to go forward would both waste judicial resources and create a risk of inconsistent adjudication.").[7]

## II.    The Relevant Abstention Principles Strongly Favor Deference to the First-Filed St. Thomas Action.

Against this backdrop, in determining whether to dismiss or stay a declaratory judgment action under the *Wilton/Brillhart* test, district courts consider the following factors, all of which strongly weigh in favor of abstention here: (1) the scope of the pending state proceeding and the nature of the defenses available there; (2) whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding; (3) whether the necessary parties have been joined; (4) whether such parties are amenable to process in that proceeding; (5) avoiding duplicative proceedings; (6) avoiding forum shopping; (7) the relative convenience of the fora; (8) the order of filing; and (9) choice of law.  *TIG Ins. Co. v. Fairchild Corp.*, 2008 WL 2198087, at *2 (S.D.N.Y. May 27, 2008); *see also Soros Fund Mgmt. LLC v. TradeWinds Holdings, Inc.*, 2018 WL 1276879, at *3 (S.D.N.Y. Mar. 12, 2018) ("Some courts in this District, citing *Wilton* and *Brillhart*, have analyzed as many as nine factors.").

Additionally, the Second Circuit in *Dow Jones* developed a set of factors "to guide the exercise of discretion in Declaratory Judgment Act cases," such as: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy

---

[7] *Cf. Certain Underwriters at Lloyd's v. New Dominion*, *LLC*, 2016 WL 4688866 (S.D.N.Y. Sept. 7, 2016) (no abstention where, unlike here, there was no challenge to the enforceability of New York forum selection clause pending in the other action).

is being used merely for "procedural fencing" or a "race to res judicata;" (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (5) whether there is a better or more effective remedy.  346 F.3d at 359–60; *see also ICBC Standard Secs., Inc. v. Luzuriaga*, 217 F. Supp. 3d 733, 738–39 (S.D.N.Y. 2016) (citing both *TIG* and *Dow Jones* factors in determining dismissal was appropriate).

Application of these factors to the New York Action further confirms the propriety of dismissal.

### A.    DiamondRock's First-Filed St. Thomas Action Involves the Same Parties, Claims, and Issues as the Later-Filed New York Action.

Because, as the Insurers concede, this second-filed New York Action is entirely duplicative of DiamondRock's first-filed St. Thomas Action, the first through fifth *TIG* factors—as well as and the first through third and fifth *Dow Jones* factors—all support dismissing or staying New York proceedings.  All of the issues in dispute between all of the necessary parties can and should be decided in the St. Thomas Action, rendering this New York Action nothing more than entirely duplicative of the proceedings there.

Indeed, "courts have found no 'useful purpose' and declined to exercise jurisdiction over a declaratory judgment complaint where a coercive suit exists that will settle the legal issues for which declaratory judgment was sought."  *Dish Network, L.L.C. v. Am. Broad. Cos.*, 2012 WL 2719161, at *4 (S.D.N.Y. July 9, 2012) (citing *Amusement Indus. v. Stern*, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010)).[8]  This is particularly true in coverage disputes involving a single set of

---

[8] Courts will  dismiss declaratory judgment actions even where the parallel action is not identical, where the court in the concurrent action has the ability to adjudicate all the parties' respective rights.  *See, e.g.*, *Glencova Inv. Co. v. Trans-Res., Inc.*, 874 F. Supp. 2d 292, 307 (S.D.N.Y. 2012).

insurance policies, where "reducing the number of court proceedings involved with any given issue entails a more efficient use of judicial resources." *Ace Am. Ins. Co. v. GrafTech Int'l Ltd.*, 2014 WL 2884681, at *5 (S.D.N.Y. June 24, 2014).

Here, not only is the St. Thomas Action likely to proceed against the other Insurers, but even as against XL notwithstanding XL's forum selection clause.  First, as mentioned, the Insurer defendants in St. Thomas other than XL have no New York forum selection provisions in their policies and thus no legitimate basis whatsoever to avoid the jurisdiction of the court in the St. Thomas Action.  *See, e.g.*, *Dish Network, L.L.C.*, 2012 WL 2719161, at *6 (dismissing some but not all parties in favor of California litigation).  One insurer answered in the St. Thomas Action, did not join the Insurers' motion to dismiss there, and is not a party to this New York Action.  And, while XL may assert some special status because its policy covers approximately 75% of the exposure, each of the other Insurers have millions of dollars in independent coverage obligations to DiamondRock (none follow the XL policy), which DiamondRock is entitled to enforce.

Second, XL's forum selection clause, even if properly in the XL policy in effect at the time of loss, is not enforceable in St. Thomas: (1) in light of clear Virgin Islands law voiding such clauses when applied to insured property in that territory, 22 V.I.C. § 820 (*see, e.g.*, *Neon Const. Enters., Inc. v. Int'l Bonding & Const. Servs., Inc.*, 2012 WL 3111748, at *2 (V.I. Super. Ct. July 25, 2012) (noting the Virgin Islands Legislature's "very clear policy dictating that forum selection clauses and choice-of-law clauses cannot be enforced when the subject matter of an insurance contract is in the Virgin Islands")); and (2) because enforcement would require litigation in an inconvenient forum, here in New York (*see, e.g.*, *Philo v. Armstrong Serv., Inc.*, 2017 WL 2294638, at *3–4 (V.I. Super. Ct. May 22, 2017) (declining to enforce a mandatory New York forum selection clause where, as here, the injury being litigated "occurred in the Virgin Islands,"

"presumably, the majority of the witnesses in th[e] case [were] located in the Virgin Islands," one contracting party was a "Virgin Islands corporation[]" and another was "registered to do business in the Virgin Islands," and "the connection between New York and th[e] matter [at hand was] tenuous")).[9]

Short of abstaining, this Court—which "lacks the power to put a stop to the claims against [the Insurers] in the [St. Thomas] Action"—will be forced by the Insurers into what this Court has called an "unseemly" "race to *res judicata*." *Turbi de Angustia*, 2005 WL 2044930, at *4. With that in mind, "[t]here is 'a simpler, better and more effective remedy than a [New York] declaratory judgment action: allowing [the Insurers'] defense[s] to be resolved in the first-filed underlying litigation' in [the St. Thomas] court." *Soros Fund Mgmt. LLC*, 2018 WL 1276879, at *5 (quoting *Am. Int'l Grp., Inc. v. Pac. Inv. Mgmt. Co. LLC*, 2016 WL 1572994, at *4 (S.D.N.Y. Apr. 18, 2016)).

**B.      This Territorial Law-Centered, Real Property Coverage Dispute Presents the Paradigm Case for Abstention.**

This matter involves an important St. Thomas business and property, the Frenchman's Reef, and a unique question of Virgin Islands law—the interpretation and application of territorial building code law. *See, e.g.*, 29 V.I.C. § 310(1–3), (8) (describing various triggers for building code upgrades based on the extent or nature of damage or repairs, "as determined by the [DPNR] Commissioner"). Because Virgin Islands law must be applied and this New York Action could encroach on the domain of the St. Thomas court, both the ninth *Wilton/Brillhart* factor identified

---

[9] *See also Beedle v. Kilgus*, 2017 WL 5665413, at *2 (V.I. Super. Ct. Nov. 21, 2017) (setting aside a mandatory Ohio forum selection clause on inconvenience grounds, because, as here, the "situs of the injury [was] in the Virgin Islands;" the "majority of witnesses may [have been] located in the Virgin Islands;" and there were at least "foreseeable difficulties and costs relating to" accessing evidence, ensuring witness attendance, and providing for "a view of the premises, if necessary").

in *TIG* and the fourth factor identified in *Dow Jones* support a decision to decline jurisdiction here in New York.  *See TIG*, 2008 WL 2198087, at \*2; *Dow Jones*, 346 F.3d at 359–60.

While XL may argue that under its forum selection clause New York law is to apply to the interpretation of the XL policy (though that portion of the XL clause also is unenforceable in the St. Thomas Action, *see* 22 V.I.C. § 820), there can be no dispute that Virgin Islands law applies to the central question of whether the exterior walls of the Resort's two main buildings must be repaired to current building code standards pursuant to 29 V.I.C. § 310(1–3), (8).  It should be undisputed that the building code upgrade coverage in the Insurers' policies is triggered by the "enforcement of any law, ordinance or governmental directive or standard in force at the time of the loss."  Watson Decl. ¶ 12.  What the Insurers dispute, however, is whether Mr. Douglas Hodge, Director of the Virgin Islands DPNR Division of Building Permits, is requiring the building code upgrades and, if so, whether he is correct in doing so under 29 V.I.C. § 310(1–3), (8).  That dispute concerns not the interpretation of the XL policy, but the interpretation and application of the Virgin Islands building code statute—i.e., *Virgin Islands law*.  And, as no reported judicial decision has ever discussed, or even cited, 29 V.I.C. § 310, this fundamental dispute turns on issues of Virgin Islands law that have not been clarified or resolved by the Virgin Islands judiciary.

The Virgin Islands has a strong interest in applying its own law in its own courts to such a dispute, as part of its effort to ensure that its own territorial building codes—as interpreted by its own territorial officials—are appropriately enforced and respected.  *See, e.g.*, *B A Props., Inc. v. Aetna Cas. & Sur. Co.*, 273 F. Supp. 2d 673, 680 (D.V.I. 2003) (the Virgin Islands "has a strong expectation that its law will be applied to questions involving interests in real property lying within its jurisdictional boundaries"); *Citibank, N.A. v. Cahmmah*, 44 V.I. 85, 97 (V.I. Terr. Ct. 2001) (where property "at issue in this suit is located in St. Thomas," Virgin Islands has a "strong interest

in the disposition of said property").  As the Virgin Islands Supreme Court recently explained, "in enacting the Building Code, the [Virgin Islands] Legislature intended 'to safeguard life and limb, property, and public welfare'" in the territory.  *One St. Peter, LLC v. Bd. of Land Use Appeals*, 67 V.I. 920, 928 (2017) (quoting 29 V.I.C. § 292(a)).  And a court in the Virgin Islands has the strongest interest in determining how to apply the Virgin Islands' own code statute to the territory's largest hotel.[10]

### C.    The Virgin Islands is the More Natural and Convenient Forum to Litigate the Parties' St. Thomas-Based Dispute.

The sixth (avoidance of forum shopping) and seventh (the relative convenience of the fora) *TIG* factors also strongly justify abstention.

First, "[c]ourts in the Second Circuit have repeatedly refused to exercise jurisdiction over declaratory actions motivated by a desire to wrest the choice of forum from the real plaintiff." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Int'l Wire Grp., Inc.*, 2003 WL 21277114, at *6 (S.D.N.Y. June 2, 2003); *see also Fed. Ins. Co. v. The May Dep't Stores Co.*, 808 F. Supp. 347, 350 (S.D.N.Y. 1992) ("[T]he misuse of the Declaratory Judgment Act to gain a procedural

---

[10] To the extent that there are disputed issues in this case that sound in general insurance law, rather than building code law, that consideration also weighs in favor of abstention.  In this Circuit, "courts routinely dismiss insurance disputes because such cases are governed by state law and are therefore especially appropriate for resolution before the state court."  *C Fink Family Trust ex rel. Landau*, 2011 WL 1453793, at *3 (collecting cases).  Further, whether Virgin Islands, New York, or another state's general insurance law applies to the policies and the parties' dispute more broadly is of relatively little import, as no party is asserting that *federal* law will play any real role in this litigation.  *See, e.g.*, *A&E Television Networks v. Genuine Entm't, Inc.*, 2010 WL 2308092, at *3 (S.D.N.Y June 10, 2010) (although "applicability of *federal* law militates strongly against *Brillhart* abstention, the choice between different state law is of comparatively small import"); *Fed. Ins. Co. v. Safeskin Corp.*, 1998 WL 832706, at *3 (S.D.N.Y. Nov. 25, 1998) (abstaining in part because, "[a]lthough the parties dispute which state's law applies, they agree that state, not federal, law applies").

advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action.") (quotation marks omitted).

The Insurers' New York Action is plainly so motivated.  Each of the Insurers are subject to the jurisdiction of the St. Thomas court and clearly could have proceeded to the merits there, but, instead, perceived some distinct advantage to shifting this St. Thomas-centered dispute to a New York court.  Other than for XL's purported forum selection clause (which, again, is barred by Virgin Islands law and is in the policy of and applicable to only one of the Insurers), this matter has no relevant connection to New York, a hallmark of forum shopping.  Indeed, none of the parties—not DiamondRock, nor any of the Insurers—are incorporated, or have their principal place of business, in New York.  Watson Decl. Ex. A ¶¶ 11–15.  The property at issue is in the Virgin Islands, more than 1,500 miles away from New York.  And, no New York building codes, or other health and safety protections, are implicated.

In circumstances such as this, where the first-filed action is pending in a forum with "strong" ties to the facts of the case and "there is no connection to New York aside from the exclusive forum selection clause," this Court has not hesitated to dismiss the second-filed action, and should do so again here.  *See Impala Warehousing (US) LLC v. Kostmayer Const., LLC*, 2012 WL 6621729, at *3 (S.D.N.Y. Dec. 19, 2012) (dismissing in favor of a first-filed action in Louisiana).

Second, it cannot be validly disputed that litigation of this matter in New York as opposed to St. Thomas would be very inconvenient (other than, perhaps, for the Insurers' counsel).  At any trial, testimony from various Virgin Islands residents will be needed, including testimony from Douglas Hodge (Director of the DPNR Division of Building Permits) and possibly additional DPNR officials, as well as various other Virgin Islands residents (project managers and

contractors) involved in the assessment of the damage and reconstruction of the Resort.  Watson Decl. ¶ 14.[11]  There is a serious risk of prejudice to DiamondRock that some or all will be unable or unwilling to travel to New York.  *See, e.g.*, *Houston Gen. Ins. Co. v. Equitable Life Assur. Soc. of U.S.*, 1989 WL 13473, at *4 (W.D.N.Y. Feb. 15, 1989) (abstaining in favor of a parallel federal action in New Jersey, in part because "some of the relevant witnesses [were] located beyond the reach of [the New York] Court's subpoena power").  Moreover, most witnesses outside of the Virgin Islands either are not located in New York or are paid professionals who have already traveled to the Virgin Islands multiple times and certainly can do so again.  Watson Decl. ¶ 15.

## CONCLUSION

Unless and until the Insurers can convince the St. Thomas court to dismiss the St. Thomas Action—a very unlikely outcome—this Court can and should decline to exercise jurisdiction over this duplicative suit.  For the foregoing reasons, DiamondRock respectfully requests that the Court dismiss or stay this action in favor of the St. Thomas Action.

---

[11] Moreover, a view of the premises in St. Thomas may be essential for a finder of fact to appreciate both the magnitude of destruction, and the need for rebuilding to conform to the more stringent current building codes.

Dated:  New York, New York
         January 4, 2019

Respectfully submitted,

COVINGTON & BURLING LLP

By: _s/ David A. Luttinger Jr._
     David A. Luttinger Jr.

     David A. Luttinger Jr.
     620 Eighth Avenue
     New York, New York 10018
     (212) 841-1000

     Matthew J. Schlesinger
     Colin P. Watson
     850 10th Street, NW
     Washington, DC 20001
     (202) 662-6000

*Attorneys for Defendants DiamondRock
Hospitality Company and DiamondRock
Frenchman's Owner, Inc.*

18